# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

ONEIRO TECHNOLOGIES, INC.,

      Plaintiff,

v.

GEEKPLUS AMERICA INC.,
LIFTONE LLC, BLUESKYE
AUTOMATION LLC,

      Defendants.

## COMPLAINT

Oneiro Technologies, Inc. ("Oneiro") by and through its undersigned counsel, hereby files this Complaint and alleges the following against defendants:

## JURISDICTION AND VENUE

1. This is an action for trade secrets, theft and misappropriation by defendants who are in the business of warehouse automation, material handling solutions, and supply chain management in violation of the Economic Espionage Act of 1996 as amended by the Defend Trade Secrets Act of 2015; copyright infringement in violation of the Copyright Act of 1976, 17 U.S.C. § 101, et seq.; false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a); breach of contract; unfair competition; unjust enrichment; and other claims asserted under the state laws of Georgia and California.

2.      This Court has subject matter jurisdiction over the federal claims asserted herein pursuant to 28 U.S.C. §§ 1331 and 1338.

3.      This Court has subject matter jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367.

4.      This Court has personal jurisdiction over Defendants because, among other things, (i) this case arises out of agreements made or to be performed in Georgia, and (ii) Defendants have derived substantial revenue from goods and/or services rendered in Georgia and from interstate commerce.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1391(c)(2) because a substantial part of the events or omissions by Defendants giving rise to the claims occurred in this district and Defendants "reside" in the Northern District of Georgia given that Defendants are subject to personal jurisdiction in this District.

6.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) and 1400(a) because the events giving rise to the claims occurred in this district, Defendants engaged in infringement in this district, Defendants reside in this district, and Defendants are subject to personal jurisdiction in this district.

## PARTIES

7.      Oneiro is a California corporation, with its principal place of business at 2936 Cameron Drive, Rocklin, California 95765.

**SRIPLAW**

CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

8.      Defendant GeekPlus America Inc. ("GeekPlus") is a Delaware corporation and a subsidiary of Geekplus Technologies Co. Ltd. with its principal place of business at 3970 Johns Creek Court, Suite 325, Suwanee, GA, 30024.

9.      Defendant LiftOne LLC "(LiftOne") is a North Carolina Company and subsidiary of Weisiger Group with its principal place of business at 440 E. Westinghouse Blvd., Charlotte, North Carolina 28273.

10.     Defendant BlueSkye Automation, LLC ("BlueSkye") is a North Carolina corporation and a subsidiary of Weisiger Group with its principal place of business at 440 E. Westinghouse Blvd., Charlotte, North Carolina 28273.

## CONFIDENTIAL DEVELOPMENT OF ONEIRO'S TRADE SECRET MODERN WAREHOUSE DESIGN

11.     Oneiro Technologies, founded by engineer Drew Thomas, is a turn-key integrated warehouse automation designer for custom warehouse automation projects.

12.     Thomas has worked in the field of industrial control systems and industrial engineering for over twenty-five years.

13.     Throughout Thomas's career he has designed, engineered and built manufacturing, bottling, processing, and logistics facilities across numerous industries.

14.     First for Barry-Wehmiller Design Group (now BW Design Group), and later for Honeywell-Intelligrated and Design Conveyor Systems, Thomas

**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

designed, engineered and built automated facilities from small winery operations to huge retail distribution centers.

15. In 2020, Thomas began working independently to concept, engineer and develop a modern e-commerce fulfillment center design that made efficient and effective use of the vertical space within the warehouse.

16. Thomas' design extended the warehouse automation operations, functions and components into the typically neglected vertical space above the warehouse floor operations.

17. Thomas' design combined sortation, picking and storage within the same vertical space from floor to ceiling, saving costs and boosting efficiency.

18. Thomas' design integrated a four-way pallet shuttle automated storage and retrieval system (ASRS) with autonomous mobile robots ("AMRs") and palletizing robots.

19. Thomas' design vertically layers autonomous systems in which a pallet shuttle ASRS is constructed above and operated in coordination with a floor-based AMR system.

20. Thomas' design requires proprietary and confidential technical knowledge in order to implement the autonomous systems using a pallet shuttle ASRS constructed above and operated in coordination with a floor-based AMR system.

**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

21.    Thomas' design utilized components like stanchion brackets and tube rails that were originally designed and developed by Thomas.

22.    Thomas' design requires proprietary and confidential technical knowledge in order to design and construct the steel structures utilizing the stanchion bracket and rail components successfully within an autonomous warehouse.

23.    Thomas' design includes numerous innovations that were developed originally by Thomas and maintained by Oneiro as confidential and never disclosed except under confidentiality agreement or sufficient assurances of confidentiality.

24.    Oneiro's CEO, Drew Thomas, developed the novel modern warehouse design based on years of industry experience, proprietary knowledge, and always maintained the information necessary to implement the design successfully as a trade secret.

25.    Oneiro's solution dramatically increases warehouse efficiency and throughput by automating material movement and order fulfillment, eliminating errors and allowing businesses to scale efficiently.

26.    Oneiro has become the technical authority on modern warehouse design and implementation, providing design, engineering, and subject matter expertise ("SME") for complex automated warehouse solutions.

**SRIPLAW**

CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

**STRATEGIC PARTNERS**

27.    Implementation of Oneiro's modern warehouse designs required Thomas, on behalf of Oneiro, to develop relationships with strategic partners that could provide the technology and robotics necessary to implement Oneiro's design, steel manufacturers who can produce components like stanchion brackets and rails to implement Oneiro's design, and general contractors with established business relationships with potential customers for Oneiro's modern warehouse design.

28.    During early development of its modern warehouse design, Oneiro approached GeekPlus as a potential technology and robotics partner.

29.    GeekPlus is a supplier of robotic sorting and shelf-to-person AMRs.

30.    GeekPlus relies on relationships with industrial engineering companies like Oneiro because robots are only effective if the entire warehouse operation—flows, layout, racking, and controls—is engineered around them. Robots live inside a larger system; Oneiro designs, implements, and constructs that larger system.

31.    A robot vendor like GeekPlus can easily fail at deployments without an industrial engineering firm like Oneiro that matches technology to real operational needs.

32.    Warehouse robotics systems like those sold by GeekPlus are tightly coupled to the building and racking structure; mistakes here are expensive and

**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

sometimes dangerous. Structural and industrial engineers design those elements to meet stringent tolerances and codes.

33. For a robotics provider like GeekPlus, the relationship with an industrial engineering firm increases the odds that the proposed solution delivers measurable ROI in the real operating context, which is what drives repeat business and references.

34. Beyond engineering, an ongoing relationship between a company like GeekPlus and industrial engineering firms like Oneiro is commercially valuable. When designs come from or are validated by engineering firms like Oneiro who specialize in warehouse operations, customers trust performance claims more. Access to projects is provided by industrial engineers who are often involved at the concept/layout phase, before specific technologies are chosen, so partnering with a company like Oneiro gets GeekPlus, the robot vendor, "written into" Oneiro's design.

35. Automation is also viewed by companies like Oneiro as a continuous improvement program, not a one-off project, which invariably means that a relationship will lead to follow-on work for a robotics vendor like GeekPlus. In short, while robots are powerful tools, industrial engineers design the playground in which they operate in, and without that relationship, a robotics provider is selling isolated machines or none at all.

**SRIPLAW**

CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

36.     After significant consideration and evaluation, Oneiro engaged GeekPlus as its robotics and software provider for a shelf-to-person warehouse system for The Life is Good Company ("Life is Good").

37.     The project for Life is Good was Oneiro's first implementation of a shelf-to-person warehouse design to later be incorporated into its modern warehouse design.

38.     Oneiro preserved the confidentiality of its modern warehouse design during all phases of the Life is Good project.

39.     On March 23, 2021, Oneiro and GeekPlus signed a Mutual Non-Disclosure Agreement ("MNDA") attached hereto as **Exhibit 1**.

40.     The MNDA establishes confidentiality so that Oneiro could freely share its proprietary modern warehouse design with GeekPlus.

41.     The MNDA required GeekPlus to maintain the confidentiality of the information shared by Oneiro at all times.

42.     Oneiro and GeekPlus agreed that the MNDA shall be governed by the laws of the State of California.

43.     That same day Oneiro and GeekPlus signed a Memorandum of Understanding ("MOU") which is attached hereto as **Exhibit 2**.

44.     The MOU memorialized the parties' relationship, responsibilities and compensation for the Life is Good project and future projects.

**SRIPLAW**

CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

45.    Under the MOU, Oneiro and GeekPlus agreed that Oneiro would be the system integrator on future projects secured by Oneiro where GeekPlus would be the robotics and technology supplier.

## SHIP8 PROJECT DEVELOPMENT

46.    In April of 2021, Oneiro was introduced to Defendant LiftOne by Pallet Shuttle Automation (PSA).

47.    LiftOne's traditional business is selling forklifts. Forklifts are a commodity product. Customers see forklifts as largely interchangeable machines bought on price and financing.

48.    Contrast selling forklifts to selling warehouse design services integrated with automation like Oneiro provides and you can see why LiftOne was interested in Oneiro's technology.

49.    Oneiro's modern warehouse design provides a higher-value service that directly drives customers' revenue, margins, and strategic advantage. Oneiro's business requires ground up designing or redesigning the customer's entire fulfillment physics: layout, workflows, software, and automated systems. Oneiro's business solves a much higher-value problem for customers than simply selling forklifts.

50.    Oneiro's modern warehouse design includes not just the sale of equipment like robots, ASRS, AMRs, automated forklifts, and conveyors, but

SRIPLAW
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

Oneiro's services also cut cost per pick, reduce labor dependency, and stabilize processes, which directly improves margins.

51.    EBITDA margins double in some businesses after large-scale automation projects because throughput and efficiency rise while variable costs grow much more slowly. Improvements impact customer service levels, delivery promises, and competitive positioning, so executives view them as strategic investments rather than commodity purchases like forklifts.

52.    For a forklift dealer like LiftOne, moving into integrated warehouse design and automation was especially attractive because it leveraged existing relationships and domain knowledge but allowed LiftOne to escape the commodity trap of forklift sales. An analogy: a forklift is like selling a car to a courier company; designing and automating a warehouse is like designing their entire logistics network and routing system. The second is inherently more strategic, harder to replace, and more profitable.

53.    The purpose of LiftOne's introduction to Oneiro by PSA was to obtain Oneiro's assistance on a project for a potential customer known as Ship8 Inc. (formerly known as "OA Logistics").

54.    At the time, Ship8 was interested in a new approach to automate their fulfillment operations. Ship8 used traditional pick modules with pallet racking, a

conveyor system, and special forklifts referred to as Order Pickers. automated storage and retrieval system for its fulfillment warehouse.

55. PSA requested Oneiro develop and design the warehouse automation plans for the Ship8 project.

56. Oneiro proposed that GeekPlus provide the robotics equipment and software for the project.

57. From May of 2021 through September of 2021, Oneiro designed the Ship8 warehouse automation for implementation in a warehouse in Savannah, Georgia. The warehouse was originally to be located in Wilmer, Texas, but the location was changed to Savannah, Georgia (the "Ship8 Project").

58. The Oneiro modern warehouse design that Oneiro proposed used GeekPlus robotic equipment including the GeekPlus P800 system, the GeekPlus' S100 sorting system, another company's 6-axis robot arms, and a pallet shuttle ASRS system.

59. The essential details necessary for the implementation, construction, and operation of the Oneiro modern warehouse design that Oneiro proposed were maintained by Oneiro as a trade secret.

60. In August of 2021, Drew Thomas of Oneiro met with a representative of LiftOne, Jason Anderson, to discuss the Ship8 Project.

**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

61.     At that time, LiftOne sought an automation partner because LiftOne's parent company, CTE (now Weisiger), had previously tried and failed to create its own automation firm called "BlueSkye."

62.     BlueSkye failed to gain traction in the industry and was closed down by LiftOne's parent company.

63.     When Thomas and Anderson met, LiftOne proposed Oneiro be the sole turn-key warehouse automation designer and supplier for LiftOne on future projects.

64.     The arrangement proposed by LiftOne put Oneiro in a subcontractor position to LiftOne on warehouse automation projects.

65.     The arrangement proposed by LiftOne permitted Oneiro to provide services for the implementation, construction, and operation of the Oneiro modern warehouse design that Oneiro proposed but maintain the essential details necessary for the successful implementation, construction and operation as a trade secret.

66.     On November 20, 2021, Ship8 awarded the Ship8 Project to LiftOne. Under the project's proposal, LiftOne agreed to contract Oneiro to supply all the warehouse automation technology required for the Ship8 Project as a subcontractor to LiftOne.

67.     On December 9, 2021, LiftOne sent a purchase order to Oneiro for the Ship8 Project, a copy of which is attached as **Exhibit 3**. Under the purchase order,

LiftOne was to pay Oneiro $11,500,000.00 for its role in the Ship8 Project, and Oneiro was to use a portion of the money allocated under the purchase order to pay for the robotics needed to implement the project that would be purchased from GeekPlus.

68.    On December 27, 2021, Oneiro and GeekPlus executed a Master Channel Partner Agreement ("MCPA") which is attached hereto as **Exhibit 4**.

69.    Oneiro and GeekPlus agreed that the Master Channel Partner Agreement shall be governed by the laws of the State of California.

70.    The MCPA provided that the parties would maintain confidentiality of each other's intellectual property and comply with the MNDA entered into between Oneiro and GeekPlus.

71.    On December 31, 2021, Oneiro and GeekPlus executed a Project Agreement for Supply and Installation of the Ship8 Project which is attached hereto as **Exhibit 5**.

72.    The combination of the MCPA and Project Agreement put GeekPlus in a subcontractor position to Oneiro on the Ship8 Project.

73.    Thereafter, Oneiro, GeekPlus and LiftOne worked together to develop guidelines and proposals for the Ship8 Project.

74. Oneiro and LiftOne agreed that LiftOne would procure and install steel shelving and components including the steel structure, stanchion brackets and rails for the warehouse according to Oneiro's design.

75. The Ship8 Project was successfully constructed.

76. Oneiro performed its duties and requirements for the Ship8 Project.

77. On December 18, 2022, Oneiro, LiftOne, GeekPlus, and Ship8 all executed a "Go-Live" document, which is attached hereto as **Exhibit 6**, memorializing that the systems built for the Ship8 Project were put into operation and Ship8 would get beneficial use.

## NISSAN-CANTON PROJECT

78. On August 18, 2021, around the same time Oneiro and LiftOne agreed for Oneiro be the LiftOne automation partner, LiftOne engaged Oneiro to pursue a business opportunity to construct a modern warehouse automation project for Nissan at Nissan's Canton, Mississippi warehouse (the "Nissan-Canton Project").

79. LiftOne began sharing files and data with Oneiro for the Nissan-Canton Project.

80. At LiftOne's request, Oneiro developed an initial plan for the Nissan-Canton Project similar to the plan for the Ship8 Project.

81. Oneiro's design of the Nissan-Canton Project presented Oneiro's modern warehouse automation solutions for Nissan's fulfillment warehouses.

**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

82.     The essential details necessary for the implementation, construction, and operation of the Oneiro modern warehouse design for the Nissan-Canton Project that Oneiro proposed were maintained by Oneiro as a trade secret.

83.     On September 24, 2021, Drew Thomas of Oneiro, Jason Anderson of LiftOne, and representatives of Nissan held a joint call during which Thomas presented the plan for the Nissan-Canton Project including the design of the ASRS and AMRs for the project.

84.     Thomas did not disclose any of the trade secrets at issue in this case on the call or in sufficient detail to permit their use in the implementation, construction, and operation of the Oneiro modern warehouse design for the Nissan-Canton Project.

85.     During the call Nissan expressed interest in the design developed by Oneiro and indicated that they wanted to use the design.

86.     On January 20, 2022, Oneiro sent Nissan an initial proposal drawing and estimated costs for the Nissan-Canton Project.

87.     Thomas did not disclose any of the trade secrets at issue in this case in the initial proposal or in sufficient detail to permit their use in the implementation, construction, and operation of the Oneiro modern warehouse design for the Nissan-Canton Project.

**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

88.    Oneiro's proposal provided that LiftOne would be the general contractor for the project, Oneiro would supply all the warehouse automation technology required as a subcontractor to LiftOne, and Oneiro would engage GeekPlus as a sub-contractor to provide the warehouse automation technology under a similar agreement to that used for the Ship8 Project.

89.    LiftOne relied on Oneiro to provide the detailed specifications and unit pricing information so that LiftOne could secure the Nissan-Canton project as general contractor.

90.    In April of 2022, while Oneiro and LiftOne continued working on the Nissan-Canton Project, LiftOne approached Oneiro with another opportunity for a modern warehouse design project at Nissan's facility in Smyrna, Tennessee (the "Nissan-Smyrna Project").

91.    LiftOne informed Drew Thomas of Oneiro that Nissan was interested in a similar Oneiro design to the Nissan-Canton Project for Nissan's Smyrna, Tennessee warehouse.

92.    From March 30, 2022, to July 26, 2022, Oneiro's Drew Thomas communicated directly with Nissan, with copies to LiftOne, concerning aspects of the Nissan-Smyrna Project, including preliminary design options, pricing, and general technical specifications such as pallet rack configurations, baseplate considerations, and concrete floor requirements.

**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

93.    The communications between and among Oneiro, Nissan and LiftOne did not disclose any of Oneiro's trade secrets at issue in this case or in sufficient detail to permit their use in the implementation, construction, and operation of the Oneiro modern warehouse design for the Nissan-Smyrna Project.

94.    Oneiro was solely responsible for designing and creating the detailed specifications and unit pricing Nissan needed to move forward with the Nissan-Smyrna Project.

95.    In October of 2022, based on the specifications and unit pricing provided by Oneiro, Nissan approved "Phase 1" of the Nissan-Canton Project with Oneiro as the system integrator as a sub-contractor to LiftOne.

## ONEIRO'S COPYRIGHTED DESIGN IN THE OPEN-FRAME PALLET SHUTTLE ASRS

96.    Drew Thomas created the original drawings for the Open-Frame Pallet Shuttle ASRS The drawings for the open frame pallet shuttle ASRS are referred to herein as the "Work".

97.    The Work is an original creative work of authorship entitled to copyright protection.

98.    The Work was registered with the Copyright Office on June 26, 2025, Registration No. VAu 1-557-536. A true and correct copy of the registration certificate is attached hereto as **Exhibit 7**.

99.     On March 5, 2026, Drew Thomas assigned all rights in and to the Work to Oneiro Technologies, Inc.

## THE TERMS OF THE MNDA

100.   The MNDA signed by Oneiro and GeekPlus requires the parties:

(a) not to disclose, directly or indirectly, in whole or in part, the Confidential Information received from the other Party to any third party (person or entity), other than its [Representatives]. The Parties agree that a Party may reveal the Confidential Information to its Representatives only if and to the extent that such representatives need to know the Confidential Information and such Representatives are informed of the confidential nature of the Confidential Information and shall be directed to, and shall agree to act in accordance with the terms and conditions of this Agreement.

101.   GeekPlus further agreed in the MNDA "(b) not to use or exploit the Confidential Information for any reason or purpose other than solely in connection with the purpose of the disclosure or the project."

102.   GeekPlus additionally acknowledged in the MNDA that "all Confidential Information shall remain the sole and exclusive property of the Party disclosing such Confidential Information and that no licenses (patent, copyright) or other intellectual property rights are granted by the Disclosing Party to the other Party by the disclosure of the Confidential Information."

103.   The parties agreed that the MNDA "shall remain effective for a period of 36 months … however … the confidentiality and non-disclosure obligations set forth under [the] Agreement shall survive the termination of this Agreement for a period of three (3) years starting from the termination date."

## ONEIRO'S TRADE SECRETS IN MODERN WAREHOUSE DESIGN

104.   The modern warehouse designs developed by Drew Thomas for Oneiro integrating a four-way pallet shuttle automated storage and retrieval system (ASRS) with autonomous mobile robots ("AMRs") and palletizing robots, including vertically layered autonomous systems in which a pallet shuttle ASRS was constructed above and operated in coordination with a floor-based AMR system, and the necessary steel components like stanchion brackets and tube rails including the Work, are trade secret plans, designs, and processes, which derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

105.   Oneiro's cost and pricing data for its modern warehouse designs is a trade secret of Oneiro consisting of financial, business, technical, economic and engineering information, including patterns, plans compilations, formulas, designs, methods, and procedures, that derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

106. Oneiro's trade secrets will be disclosed in a trade secret statement pursuant to a confidentiality agreement and protective order in discovery in this case.

107. Oneiro's trade secrets were never disclosed to the public.

108. Oneiro's trade secrets are the result of Thomas' years of industry experience and thousands of hours of fine tuning and implementation.

109. At all relevant times, Oneiro maintained its trade secrets as confidential.

110. At all relevant times, Oneiro's trade secrets were the subject of efforts reasonable under the circumstances to maintain their secrecy.

111. Oneiro's trade secrets are not readily accessible and discoverable by proper means.

## DEFENDANTS' UNLAWFUL ACTIVITY

112. Pursuant to the MNDA, Oneiro's Drew Thomas disclosed confidential trade secret information belonging to Oneiro to GeekPlus as part of the lifecycle of designing and implementing the Ship8 Project and the Nissan Projects.

113. Towards the end of 2022, while Oneiro was completing the implementation of the Ship8 Project and continuing to finalize its design for the Nissan Projects, GeekPlus and LiftOne surreptitiously bypassed Oneiro and held communications directly with Ship8.

**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

114.    On August 4, 2022, GeekPlus communicated directly with Ship8 that installers would arrive on-site at the Ship8 facility, bypassing Oneiro and LiftOne.

115.    On August 16, 2022, Oneiro discovered that GeekPlus sent invoices directly to Ship8. Oneiro immediately notified GeekPlus that GeekPlus was never to send an invoice directly to customers, and GeekPlus acknowledged and agreed not to do that again.

116.    On January 30, 2023, Oneiro was informed that GeekPlus had approached LiftOne directly about being a dealer for LiftOne. GeekPlus was, at that time, on-site at the Ship8 Project and approached LiftOne about side deals to create a more "cost-efficient" budget proposal for the client which involved cutting out Oneiro.

117.    On January 31, 2023, LiftOne informed Oneiro that GeekPlus and LiftOne had decided to structure the Nissan Projects and future projects differently, cutting Oneiro out of the deals.

118.    On February 1, 2023, LiftOne informed Oneiro that GeekPlus would now be the supplier to LiftOne on the Nissan Projects, and that Oneiro would no longer serve as the integrator on the projects, firing Oneiro from the projects.

119.    GeekPlus used confidential and trade secret cost and pricing data belonging to Oneiro to negotiate directly with LiftOne and cut Oneiro out of the deal, in violation of the confidentiality provisions of the MNDA.

**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

120. The actions of GeekPlus and LiftOne created a dispute with Oneiro.

121. On March 22, 2023, Oneiro's Drew Thomas met with LiftOne to discuss compensation for the Nissan-Canton Project. During the conversation LiftOne informed Oneiro that GeekPlus claimed that it designed the initial concept for the Nissan-Canton Project.

122. In response, Drew Thomas of Oneiro showed LiftOne the history of design documents demonstrating that Oneiro was in fact the designer on the project.

123. On April 4, 2023, Oneiro attended a project presentation with the Nissan team that included LiftOne and GeekPlus. That presentation included concept designs developed by Oneiro.

124. The April 4th meeting was the last meeting Oneiro was invited to attend with Nissan.

125. On April 27, 2023, Oneiro discovered that Defendant BlueSkye, Weisiger's failed project implementation business, was once again operational and misrepresenting on their website that the design for the Ship8 Project was its own, not Oneiro's.

126. On May 18, 2023, while at the Ship8 facility, Oneiro discovered that BlueSkye logos had been added to the robots in the warehouse, even though BlueSkye never developed or installed the project.

127.    On June 14, 2023, Nissan toured the Ship8 facility with GeekPlus and LiftOne. Oneiro's Drew Thomas was present at the facility, but LiftOne instructed Thomas not to speak with anyone from Nissan while they were touring the facility.

128.    On November 16, 2023, Oneiro's Drew Thomas witnessed representatives from non-party Milwaukee Electric Tool Corporation ("Milwaukee Tool") tour the Ship8 facility in Savannah, Georgia. The Ship8 visitor log reflected Milwaukee Tool personnel in attendance.

129.    Oneiro's Thomas later discovered that GeekPlus and BlueSkye were working on a warehouse automation project for Milwaukee Tool which was being completed using Oneiro's trade secrets and copyrighted Work. Thomas learned that GeekPlus and BlueSkye misrepresented the Ship8 project as the work of BlueSkye in order to secure the project.

130.    Many tours have been conducted at Ship8 by BlueSkye and Geekplus misrepresenting BlueSkye as the system integrator of the Ship8 project.

131.    Beginning in 2024, BlueSkye began receiving public acknowledgment and notoriety for its "role" in implementing the Ship8 Project. On multiple occasions, GeekPlus publicly promoted marketing materials identifying BlueSkye as its partner in connection with the Ship8 project. GeekPlus and BlueSkye also jointly applied for and received industry awards relating to their work on the Ship8 Project, without any reference to Oneiro.

**SRIPLAW**

CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

132. The marketing materials and press releases published by GeekPlus and BlueSkye falsely identify BlueSkye as the integrator on the Ship8 Project.

133. The public statements and recognitions omitted or materially diminished Oneiro's role in the design and development of the Ship8 Project.

134. BlueSkye was never involved with the design, engineering, or implementation of the Ship8 Project.

135. A composite exhibit showing BlueSkye's and GeekPlus' misrepresentations is attached hereto as **Exhibit 8**.

136. On or around October 16, 2024, GeekPlus announced the opening of an innovation center at its facility located outside of Atlanta, Georgia (the "GeekPlus Innovation Center") to promote its good-to-person robot offerings. In the announcement, GeekPlus included images of the facility demonstrating that the GeekPlus Innovation Center was constructed using Oneiro's trade secrets and copyrighted Work.

137. On or around March 31, 2025, BlueSkye and LiftOne announced the opening of an innovation center in their facility located in Atlanta, Georgia (the "BlueSkye Innovation Center") to promote its warehouse robotics, forklift technology, and integrated solutions. With their announcement, BlueSkye and LiftOne included images and videos of the facility demonstrating that the

BlueSkye Innovation Center was constructed using Oneiro's trade secrets and copyrighted Work.

138.   On May 13, 2025, BlueSkye announced the completion of the Milwaukee Tool project including detailed pictures of the facility. These pictures show that the Milwaukee Tool facility used Oneiro's trade secrets and copyrighted Work.

139.   On June 16, 2025 Thomas discovered the Nissan-Canton project was officially underway.

140.   On multiple occasions, Thomas notified Geekplus leadership that Oneiro was aware of the Nissan-Canton project proceeding. Thomas also reminded Geekplus' leadership about the false representation of BlueSkye.

141.   Due to the novel nature of Oneiro's modern warehouse design, neither LiftOne, BlueSkye, nor GeekPlus could have completed or constructed the Ship8 Project, the Nissan Projects, the Milwaukee Tools Project, the GeekPlus Innovation Center, and the BlueSkye Innovation Center without having used Oneiro's trade secrets and copied the designs contained in the Work.

142.   Defendants were never authorized, licensed or permitted to use Oneiro's trade secrets and copyrighted Work.

**SRIPLAW**

CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

143. Defendants cut out Oneiro from the Nissan Projects and Milwaukee Tool project and used Oneiro's trade secrets and copyrighted Work to secure multi-million dollar projects.

144. Defendants never paid Oneiro in full for its work on the Ship8 Project and never paid Oneiro anything for its work on the Nissan Projects.

## COUNT I
## COPYRIGHT INFRINGEMENT AGAINST LIFTONE, BLUESKYE, AND GEEKPLUS

145. Oneiro incorporates the allegations of paragraphs 1 through 144 of this Complaint as if fully set forth herein.

146. Oneiro owns a valid copyright in the Work.

147. The Work is a pictorial, graphic, and sculptural work within the meaning of 17 U.S.C. § 101 and constitutes copyrightable subject matter within the meaning of 17 U.S.C. § 102.

148. Oneiro registered the Work with the Register of Copyrights of the United States Copyright Office.

149. Defendants LiftOne, BlueSkye Automation, and GeekPlus had access to the Work.

150. The Nissan Projects, the Milwaukee Tools Project, the GeekPlus Innovation Center, and the BlueSkye Innovation Center could not have been constructed without copying the design depicted in the Work.

**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

151.    As such, Defendants LiftOne, BlueSkye Automation, and GeekPlus copied, displayed, distributed and made derivative works of the Work in connection with their work on the Nissan Projects, the Milwaukee Tools Project, the GeekPlus Innovation Center, and the BlueSkye Innovation Center.

152.    Defendants LiftOne, BlueSkye Automation, and GeekPlus' actions violated Oneiro's exclusive rights in his copyright in the Work.

153.    Defendants actions were willful.

154.    Oneiro has been damaged.

155.    The harm caused to Oneiro has been irreparable.

## COUNT II
## VICARIOUS LIABILITY FOR COPYRIGHT INFRINGEMENT AGAINST LIFTONE, GEEKPLUS, AND BLUESKYE

156.    Oneiro incorporates the allegations of paragraphs 1 through 144 of this Complaint as if fully set forth herein.

157.    Defendants LiftOne and BlueSkye contracted with GeekPlus for the creation of the warehouses associated with the Nissan Projects, the Milwaukee Tool Project, the GeekPlus Innovation center, and the BlueSkye Innovation Center.

158.    Defendants LiftOne and BlueSkye's contractual relationship with GeekPlus provided it the right and ability to supervise GeekPlus' work, including but not limited to the accessing, copying, modifying, displaying, and distribution of the Work.

SRIPLAW
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

159.    Defendants LiftOne and BlueSkye failed to exercise their right and ability to supervise or control GeekPlus' actions, including but not limited to GeekPlus' accessing, copying, and modification of the Work in connection with the Nissan Projects, the Milwaukee Tools Project, the GeekPlus Innovation Center, and the BlueSkye Innovation Center.

160.    Defendants LiftOne and BlueSkye, as the general contractors for the Nissan Projects and the Milwaukee Tools projects and owners of the BlueSkye Innovation Center, had an obvious and direct financial interest in the exploitation of Oneiro's copyrighted Work.

161.    Defendants actions were willful.

162.    Oneiro has been damaged.

163.    The harm caused to Oneiro has been irreparable.

## COUNT III
## MISAPPROPRIATION OF TRADE SECRETS – VIOLATION 18 U.S.C. § 1836(b) AGAINST GEEKPLUS AND LIFTONE

164.    Oneiro incorporates the allegations of paragraphs 1 through 144 of this Complaint as if fully set forth herein.

165.    Oneiro's cost and pricing data for the modern warehouse is a trade secret of Oneiro.

166.    Oneiro has taken reasonable measures to keep its cost and pricing data secret.

**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

167.   Oneiro's cost and pricing data derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

168.   Oneiro shared its trade secret cost and pricing data with GeekPlus under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret.

169.   Specifically, Oneiro shared its cost and pricing data with GeekPlus pursuant to the MNDA and MCPA, which required GeekPlus to maintain the secrecy of the trade secret and limited GeekPlus' use of the trade secret.

170.   Defendant GeekPlus used Oneiro's trade secret cost and pricing information to attempt to renegotiate payment structure for the Ship8 project and to cut out Oneiro on future projects including the Nissan-Canton Project and the Milwaukee Tools Project.

171.   Defendant GeekPlus disclosed Oneiro's trade secret cost and pricing information to LiftOne.

172.   LiftOne derived knowledge of Oneiro's trade secret through GeekPlus who owed a duty to Oneiro to maintain the cost and pricing data secret and limit its use.

**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

173. Defendant LiftOne used Oneiro's trade secret cost and pricing information to renegotiate payment structure for the Ship8 project and to cut out Oneiro on future projects including the Nissan-Canton Project and the Milwaukee Tools Project.

174. Defendants' actions were willful.

175. Oneiro has been damaged.

176. The harm caused to Oneiro has been irreparable.

## COUNT IV
## MISAPPROPRIATION OF TRADE SECRETS – VIOLATION 18 U.S.C. § 1836(b) AGAINST LIFTONE AND GEEKPLUS

177. Oneiro incorporates the allegations of paragraphs 1 through 144 of this Complaint as if fully set forth herein.

178. Oneiro's modern warehouse design is a trade secret of Oneiro.

179. Oneiro took reasonable measures to keep its modern warehouse design secret.

180. Oneiro's modern warehouse design derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

181. Defendants LiftOne and GeekPlus acquired knowledge of the modern warehouse design under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret.

182. Defendants LiftOne and GeekPlus disclosed and used Oneiro's trade secret modern warehouse design in their completion of the Nissan-Canton project, the Milwaukee Tools Project, and the Innovation Centers.

183. Defendants LiftOne and GeekPlus knew or had reason to know that Oneiro's modern warehouse design was a trade secret of Oneiro.

184. Defendants' actions were willful.

185. Oneiro has been damaged.

186. The harm caused to Oneiro has been irreparable.

## COUNT V
## MISAPPROPRIATION OF TRADE SECRETS – O.C.G.A. § 10-1-761 AGAINST GEEKPLUS AND LIFTONE

187. Oneiro incorporates the allegations of paragraphs 1 through 144 of this Complaint as if fully set forth herein.

188. Oneiro's trade secret cost and pricing data for the modern warehouse is a trade secret of Oneiro.

189. Oneiro has taken reasonable measures to keep its cost and pricing data secret.

**SRIPLAW**
Cᴀʟɪғᴏʀɴɪᴀ ◆ Fʟᴏʀɪᴅᴀ ◆ Gᴇᴏʀɢɪᴀ ◆ Iɴᴅɪᴀɴᴀ ◆ Nᴇᴡ Yᴏʀᴋ ◆ Tᴇɴɴᴇssᴇᴇ

190.    Oneiro's pricing information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

191.    GeekPlus disclosed Oneiro's pricing information under an agreement to maintain its confidentiality.

192.    Defendants LiftOne and GeekPlus acquired knowledge of Oneiro's pricing information under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret.

193.    Defendants LiftOne and GeekPlus disclosed and used Oneiro's trade secret pricing information.

194.    Defendants LiftOne and GeekPlus knew or had reason to know that Oneiro's pricing information was a trade secret of Oneiro.

195.    Defendants' actions were willful.

196.    Oneiro has been damaged.

197.    The harm caused to Oneiro has been irreparable.

## COUNT VI

## MISAPPROPRIATION OF TRADE SECRETS – O.C.G.A § 10-1-761 AGAINST LIFTONE AND GEEKPLUS

198.    Oneiro incorporates the allegations of paragraphs 1 through 144 of this Complaint as if fully set forth herein.

199. Oneiro's modern warehouse design is a trade secret of Oneiro.

200. Oneiro took reasonable measures to keep its modern warehouse design secret.

201. Oneiro's modern warehouse design derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

202. Defendants LiftOne and GeekPlus acquired knowledge of the modern warehouse design under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret.

203. Defendants LiftOne and GeekPlus disclosed and used Oneiro's trade secret modern warehouse design in their completion of the Nissan-Canton project, the Milwaukee Tools Project, and the Innovation Centers.

204. Defendants LiftOne and GeekPlus knew or had reason to know that Oneiro's modern warehouse design was a trade secret of Oneiro.

205. Defendants' actions were willful.

206. Oneiro has been damaged.

207. The harm caused to Oneiro has been irreparable.

**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

## COUNT VII

## MISAPPROPRIATION OF TRADE SECRETS – VIOLATION 18 U.S.C. § 1836(b) AS TO BLUESKYE

208.  Oneiro incorporates the allegations of paragraphs 1 through 144 of this Complaint as if fully set forth herein.

209.  Oneiro's modern warehouse design is a trade secret of Oneiro.

210.  Oneiro took reasonable measures to keep its modern warehouse design secret.

211.  Oneiro's modern warehouse design derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

212.  Defendant BlueSkye acquired knowledge of the modern warehouse design under circumstances where BlueSkye knew or had reason to know that the trade secret was acquired by improper means, or under circumstances where BlueSkye knew or had reason to know that the knowledge of the trade secret was derived from or through a person who had used improper means to acquire the trade secret; acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret.

SRIPLAW
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

213. Defendant BlueSkye used Oneiro's trade secret modern warehouse design in its completion of the Nissan-Canton project, the Milwaukee Tools Project, and the Innovation Centers.

214. Defendant BlueSkye knew or had reason to know that Oneiro's modern warehouse design was a trade secret of Oneiro.

215. Defendant's actions were willful.

216. Oneiro has been damaged.

217. The harm caused to Oneiro has been irreparable.

## COUNT VIII

## MISAPPROPRIATION OF TRADE SECRETS – VIOLATION OF THE CALIFORNIA TRADE SECRETS ACT (Cal. Civ. Code §§3426 et seq.) AGAINST GEEKPLUS AND LIFTONE

218. Oneiro incorporates the allegations of paragraphs 1 through 144 of this Complaint as if fully set forth herein.

219. Oneiro's cost and pricing data for the modern warehouse is a trade secret of Oneiro.

220. Oneiro has taken reasonable measures to keep its cost and pricing data secret.

221. Oneiro's cost and pricing data derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

**SRIPLAW**

CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

222.    Oneiro shared its trade secret cost and pricing data with GeekPlus and LiftOne under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret.

223.    Specifically, Oneiro shared its cost and pricing data with GeekPlus pursuant to the MNDA and MCPA, which required GeekPlus to maintain the secrecy of the trade secret and limited GeekPlus' use of the trade secret.

224.    Defendant GeekPlus used Oneiro's trade secret cost and pricing information to attempt to renegotiate payment structure for the Ship8 project.

225.    Defendant GeekPlus disclosed Oneiro's trade secret cost and pricing information to LiftOne.

226.    LiftOne derived knowledge of Oneiro's trade secret through GeekPlus who owed a duty to Oneiro to maintain the cost and pricing data secret and limit its use.

227.    LiftOne owed an independent duty to Oneiro to maintain Oneiro's trade secret information as secret pursuant to California law which governed the agreement for the Ship8 Project between Oneiro and LiftOne.

228.    Defendant LiftOne used Oneiro's trade secret cost and pricing information to renegotiate payment structure for the Ship8 project and to cut out Oneiro on future projects including the Nissan-Canton Project and the Milwaukee Tools Project.

**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

229. GeekPlus' and LiftOne's actions were willful.

230. Oneiro has been damaged.

231. The harm caused to Oneiro has been irreparable.

## COUNT IX

## MISAPPROPRIATION OF TRADE SECRETS – VIOLATION OF THE CALIFORNIA TRADE SECRETS ACT (Cal. Civ. Code §§3426 et seq.) AGAINST GEEKPLUS AND LIFTONE

232. Oneiro incorporates the allegations of paragraphs 1 through 144 of this Complaint as if fully set forth herein.

233. Oneiro's modern warehouse design is a trade secret of Oneiro.

234. Oneiro took reasonable measures to keep its modern warehouse design secret.

235. Oneiro's modern warehouse design derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

236. Defendants GeekPlus and LiftOne acquired knowledge of the modern warehouse design under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret.

237. Defendants GeekPlus and LiftOne disclosed and used Oneiro's trade secret modern warehouse design in their completion of the Nissan-Canton project, the Milwaukee Tools Project, and the Innovation Centers.

238. Defendants GeekPlus and LiftOne knew or had reason to know that Oneiro's modern warehouse design was a trade secret of Oneiro.

239. GeekPlus' and LiftOne's actions were willful.

240. Oneiro has been damaged.

241. The harm caused to Oneiro has been irreparable.

## COUNT X
## BREACH OF CONTRACT AGAINST GEEKPLUS

242. Oneiro incorporates the allegations of paragraphs 1 through 144 of this Complaint as if fully set forth herein.

243. Oneiro and GeekPlus entered into the MDNA.

244. The MDNA is a valid and enforceable contract.

245. The MDNA requires the parties to maintain confidentiality of confidential information disclosed to the other.

246. Oneiro performed the MDNA.

247. Oneiro complied with the MDNA at all times.

248. GeekPlus breached the MDNA by, inter alia, a) disclosing confidential information and documents of Oneiro to Ship8; b) disclosing confidential information and documents belonging to Oneiro to LiftOne; c) using Oneiro's confidential information and documents to obtain business without Oneiro's involvement.

**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

249.    As a direct and proximate result of GeekPlus' breach of the Mutual Non-Disclosure Agreement, Oneiro was damaged in an amount to be proven at trial.

250.    All conditions precedent to suit have been satisfied or waived.

## COUNT XI
## BREACH OF CONTRACT MASTER CHANNEL PARTNER AGREEMENT AGAINST GEEKPLUS

251.    Oneiro incorporates the allegations of paragraphs 1 through 144 of this Complaint as if fully set forth herein.

252.    Oneiro entered into the Master Channel Partner Agreement with GeekPlus.

253.    The Master Channel Partner Agreement constitutes a valid and enforceable contract.

254.    The Master Channel Partner Agreement requires the parties to maintain confidentiality of confidential information disclosed to the other.

255.    Oneiro performed the Master Channel Partner Agreement.

256.    Oneiro complied with the Master Channel Partner Agreement at all times.

257.    GeekPlus breached the Master Channel Partner Agreement by, inter alia, a) disclosing confidential information and documents of Oneiro to Ship8; b) disclosing confidential information and documents belonging to Oneiro to LiftOne;

**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

c) using Oneiro's confidential information and documents to obtain business without Oneiro's involvement; d) falsely advertising and giving credit to BlueSkye instead of Oneiro Technologies, including applying for and accepting awards together with BlueSkye, jointly holding prospective customer walkthroughs at Ship8 without including Oneiro, and engaging in social media marketing, website marketing, and activities at innovation centers; e) securing projects under false pretenses and taking actions to remove Oneiro from the Nissan projects with LiftOne; and f) engaging in other material breaches to be determined in discovery.

258.    As a direct and proximate result of GeekPlus' breaches of the Master Channel Partner Agreement, Oneiro was damaged in an amount to be proven at trial.

259.    All conditions precedent to suit have been satisfied or waived.

## COUNT XII
## BREACH OF CONTRACT – PURCHASE AGREEMENT AGAINST LIFT ONE

260.    Oneiro incorporates the allegations of paragraphs 1 through 144 of this Complaint as if fully set forth herein.

261.    Oneiro entered into the Purchase Agreement with LiftOne.

262.    The Purchase Agreement constitutes a valid and enforceable contract between Oneiro and LiftOne.

263. The Purchase Agreement requires LiftOne to pay Oneiro for work performed.

264. Oneiro performed all the work required under the Purchase Agreement.

265. Oneiro complied with the Purchase Agreement at all times.

266. LiftOne breached the terms, covenants, promises, and warranties of the Purchase Agreement by failing to pay Oneiro the amount due under the Purchase Agreement.

267. As a direct and proximate result of LiftOne's breach of the Purchase Agreement, Oneiro was damaged in an amount to be proven at trial.

268. All conditions precedent to suit have been satisfied or waived.

## COUNT XIV
## UNJUST ENRICHMENT – AGAINST LIFTONE AND GEEKPLUS

269. Oneiro incorporates by reference paragraphs 1 through 144 of the Complaint as if fully set forth herein.

270. This count is pled in the alternative to the breach of contract counts against LiftOne and GeekPlus.

271. Oneiro provided a benefit to LiftOne and GeekPlus in the form of Oneiro's confidential and trade secret documents and information that LiftOne and GeekPlus used on the Ship8, Nissan and Milwaukee Tool projects.

272. In equity, Defendants LiftOne and GeekPlus should be required to pay Oneiro for the benefits they received.

273. It would be unjust to allow Defendants LiftOne and GeekPlus to retain the value they received.

## COUNT XV
## FALSE ADVERTISING – LANHAM ACT, 15 U.S.C. § 1125(a)(1)(B) AGAINST GEEKPLUS AND BLUESKYE

274. Oneiro incorporates by reference paragraphs 1 through 144 of the Complaint as if fully set forth herein.

275. Oneiro, GeekPlus, and BlueSkye are commercial entities operating in the same or closely related markets, including the design, integration, and implementation of automated warehouse and logistics systems.

276. In connection with the promotion and marketing of their services, GeekPlus and BlueSkye made and disseminated false and/or misleading statements of fact in commercial advertising and promotion regarding the Ship8 project.

277. Specifically, GeekPlus and BlueSkye, represented in marketing materials, industry publications, award submissions, and other promotional channels that BlueSkye served as the primary designer and/or systems integrator for the Ship8 facility, while omitting or materially diminishing Oneiro's substantial role in the design and development of the project.

**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

278.   These statements included, but were not limited to, public representations identifying BlueSkye as the "design partner" or lead integrator for the Ship8 project, as well as joint marketing efforts and industry award submissions that credited BlueSkye for work performed in substantial part by Oneiro.

279.   The foregoing statements were false and/or misleading because Oneiro performed the design, development, and integration work on the Ship8 project, and Defendants' representations mischaracterized the nature and extent of Oneiro's contributions.

280.   Defendants' statements were made in commercial advertising or promotion, were intended to influence customers and industry participants, and were disseminated to a broad audience within the relevant market.

281.   Defendants' misrepresentations concern the nature, characteristics, and qualities of the services offered – namely, Defendants' experience, capabilities, and role in designing and implementing complex automated warehouse systems.

282.   The false and misleading statements actually deceived or had the tendency to deceive a substantial segment of the intended audience by misrepresenting the origin, nature, and authorship of the work performed on the Ship8 project.

SRIPLAW

CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

283.  The deception is material in that it is likely to influence purchasing decisions, partner selection, and the awarding of contracts within the industry.

284.  As a direct and proximate result of Defendants' false and misleading statements, Oneiro has suffered and will continue to suffer competitive and commercial injury, including but not limited to loss of business opportunities, loss of goodwill, and damage to its reputation.

285.  Defendants' conduct has been willful, knowing, and intentional.

## COUNT XVI
## FALSE DESIGNATION OF ORIGIN – LANHAM ACT, 15 U.S.C. § 1125(a)(1)(A) AGAINST GEEKPLUS AND BLUESKYE

286.  Oneiro incorporates by reference paragraphs 1 through 144 of the Complaint as if fully set forth herein.

287.  Oneiro has provided specialized design, engineering, and integration services in connection with automated warehouse systems, including work performed on the Ship8 Project.

288.  GeekPlus, BlueSkye, and Ship8, in commercial advertising and promotion, have made false or misleading representations and designations of origin concerning the Ship8 Project.

289.  Defendants have falsely represented that BlueSkye was the origin, source, or primary provider of the design and integration services for the Ship8

**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

project, and have promoted BlueSkye as GeekPlus' partner or replacement of Oneiro in a manner that misrepresents the true source of those services.

290. Defendants' conduct creates a likelihood of confusion, mistake, or deception as to:

291. the origin of the design and integration services provided for the Ship8 Project;

292. the affiliation, connection, or association between Oneiro and Defendants; and

293. Oneiro's approval of Defendants' services.

294. Defendants' misrepresentations have been disseminated widely through marketing materials, public statements, and industry recognition, including joint promotional efforts and award submissions.

295. The foregoing conduct is likely to cause confusion among customers, partners, and participants in the relevant market as to who performed the underlying work and who possesses the relevant expertise.

296. As a direct and proximate result of Defendants' false designation of origin and false association, Oneiro has suffered and will continue to suffer damages, including loss of goodwill, reputational harm, and lost business opportunities.

**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

297. Defendants' conduct was intentional, willful, and in disregard of Oneiro's rights.

## COUNT XVII
## UNFAIR COMPETITION UNDER O.C.G.A. § 10-1-372 AGAINST ALL DEFENDANTS

298. Oneiro incorporates by reference paragraphs 1 through 144 of this Complaint as if fully set forth herein.

299. Defendants's activities complained of herein constitute unfair methods of competition in violation of O.C.G.A. § 10-1-372.

300. Defendants are actively working in concert to pass off the design and implementation of the Ship8 facility as their own.

301. Defendant's activities have caused likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of the Ship8 facility design.

302. Defendants misrepresent that the Ship8 facility was designed and implemented by Defendant BlueSkye when BlueSkye did not design or implement the Ship8 facility.

303. Defendants continued unfair trade practices have caused and will continue to cause damage to Oneiro.

**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

## COUNT XVIII

## UNFAIR COMPETITION UNDER CALIFORNIA BUS. & PROF. CODES § 17200, et seq. AGAINST GEEKPLUS

304.   Oneiro incorporates by reference the allegations of paragraphs 1 through 144 as if fully set forth herein.

305.   Oneiro holds trade secrets in its modern warehouse design and its cost and pricing information.

306.   GeekPlus violated California's Uniform Trade Secrets Act, committed unfair competition in violation of California's statutes and common law, and engaged in a civil conspiracy as alleged herein.

307.   GeekPlus' conduct enabled it and the other defendants to falsely pass off the design and implementation of the Ship8 facility as one that did not involve Oneiro.

308.   GeekPlus' conduct caused confusion or misunderstanding as to the source, sponsorship, approval, or certification of the Ship8 facility design.

309.   GeekPlus' conduct is likely to deceive members of the public.

310.   GeekPlus' conduct has caused and will continue to cause damage to Oneiro including injury in fact to Oneiro and loss of money by Oneiro by the loss of business or deprivation of money.

**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

## COUNT XIX
## CIVIL CONSPIRACY

311.   Oneiro incorporates by reference the allegations of paragraphs 1 through 144 of this Complaint as if fully set forth herein.

312.   Defendants, LiftOne, BlueSkye, and GeekPlus are working in concert to unlawfully interfere with Oneiro's contractual relationships and to unfairly compete with Oneiro.

313.   Defendants knowingly and willfully participated in the conspiracy with the intent to further its unlawful purpose.

314.   The acts taken in furtherance of the conspiracy were wrongful and independently tortious as described in this Complaint.

315.   As a direct and proximate result of the conspiracy and the overt acts taken in furtherance thereof, Oneiro has been damaged.

316.   Defendants' conduct was willful.

## COUNT XX
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST GEEKPLUS

317.   Oneiro incorporates by reference the allegations of paragraphs 1 through 144 of this Complaint as if fully set forth herein.

318.   Oneiro and GeekPlus entered into the MCPA and MNDA.

319.   The MCPA and MNDA are governed by California Law.

**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

320. Oneiro and GeekPlus agree that the MNDA and MCPA would govern the parties' relationship for the Ship8 Project and other future projects.

321. Oneiro performed all of its obligations under the MCPA and MNDA.

322. All conditions required for Oneiro's performance have occurred or have been waived.

323. By entering into the MNDA and MCPA, GeekPlus agreed not to do anything to unfairly interfere with Oneiro's right to receive the benefits of the MNDA and MCPA.

324. The purpose of the MNDA and MCPA was to establish the foundation of the relationship and enable the exchange of information related to any warehouse automation projects involving Oneiro and GeekPlus while preserving Oneiro's ability to benefit from its proprietary information and business opportunities.

325. Contrary to that purpose, GeekPlus knowingly and intentionally used Oneiro's confidential information to circumvent Oneiro and pursue the Nissan Project and other future projects, for its own benefit, cutting out Oneiro.

326. Oneiro shared its confidential cost and pricing data with GeekPlus pursuant to the MCPA under the protections of the MNDA.

**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

327. GeekPlus breached the MCPA by sharing confidential cost and pricing data compiled and developed by Oneiro concerning the Ship8 and Nissan Projects with unauthorized third-party recipients, including LiftOne.

328. Oneiro advised GeekPlus of its breach on August 16, 2022.

329. GeekPlus admitted its breach.

330. Despite being advised of its breach, GeekPlus continued to share Oneiro's confidential cost and pricing data on multiple other occasions including March 10, 2023, and August 1, 2023.

331. In doing so, GeekPlus undermined Oneiro's negotiating position as it relates to the Ship8 Project, which resulted in Oneiro's removal from the Ship8 Project.

332. GeekPlus benefited from Oneiro's removal by GeekPlus receiving additional compensation.

333. By knowingly sharing Oneiro's confidential cost and pricing data in violation of the MNDA and MCPA, GeekPlus acted in bad faith and breached the implied covenant of good faith and fair dealing.

334. As a result of GeekPlus' actions, Oneiro never received full payment for the Ship8 project from LiftOne and received no payments for its work on the Nissan Projects.

50

335.    As a direct and proximate result of GeekPlus' breach of the implied covenant of good faith and fair dealing, Oneiro was damaged in an amount to be proven at trial.

## COUNT XXI
## TORTIOUS INTERFERENCE WITH CONTRACT AGAINST GEEKPLUS

336.    Oneiro incorporates by reference the allegations of paragraphs 1 through 144 of this Complaint as if fully set forth herein.

337.    This claim is brought under the common law of California and is pleaded in the alternative to the claim for breach of the covenant of good faith and fair dealing against GeekPlus.

338.    Oneiro and LiftOne entered into a valid and enforceable contract pursuant to which LiftOne agreed to pay Oneiro $11.5 million for services related to the Ship8 Project.

339.    GeekPlus had knowledge of the contract between Oneiro and LiftOne, as GeekPlus was engaged to provide products and software to Oneiro for integration at the Ship8 facility in connection with that contract.

340.    GeekPlus intentionally engaged in acts designed to induce a breach or disruption of the contract between Oneiro and LiftOne, including by disclosing Oneiro's confidential cost and pricing data to LiftOne without authorization.

341.    GeekPlus further interfered with the Ship8 project by having undisclosed negotiations directly with LiftOne and Ship8 regarding the Ship8

SRIPLAW
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

project, without notifying Oneiro or receiving approval from Oneiro for such negotiations.

342. GeekPlus' actions interfered with Oneiro's ability to maintain control and led to LiftOne not finalizing payments to Oneiro for the Ship8 project.

343. As a direct result of GeekPlus's conduct, LiftOne breached and/or disrupted its contractual obligations to Oneiro by restructuring the Ship8 Project without Oneiro's involvement, including by removing Oneiro from the deal, and by replacing Oneiro with BlueSkye.

344. But for GeekPlus' wrongful conduct, LiftOne would have performed its obligations under the contract, including payment of the agreed-upon compensation to Oneiro.

345. As a direct and proximate result of GeekPlus' interference, Oneiro was deprived of the benefits of the contract.

346. As a direct and proximate result, Oneiro was damaged in an amount to be proven at trial.

347. All conditions precedent to suit have been satisfied or waived.

## COUNT XXII
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST GEEKPLUS

348. Oneiro incorporates by reference the allegations of paragraphs 1 through 144 of this Complaint as if fully set forth herein.

**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

349. This claim is brought under the common law of California.

350. Oneiro had an economic relationship with Nissan related to the Nissan Projects, including advanced discussions and a reasonable probability that Oneiro would be retained as the warehouse designer, engineer and systems integrator for the warehouse automation projects.

351. GeekPlus knew of this relationship, as GeekPlus was engaged by Oneiro to provide products and software for integration in connection with the Nissan Projects.

352. GeekPlus engaged in independently wrongful conduct by disclosing Oneiro's confidential and proprietary cost and pricing data to LiftOne on multiple occasions without authorization, in violation of its contractual and legal obligations to Oneiro.

353. GeekPlus undertook these actions intentionally and with the purpose of disrupting the relationship between Oneiro and Nissan, and to eliminate Oneiro from the Nissan Projects so that GeekPlus could benefit from the opportunity.

354. As a direct result of GeekPlus' conduct, LiftOne restructured the Nissan Projects without Oneiro's involvement, removed Oneiro as the warehouse designer, engineer and systems integrator, and replaced Oneiro with its affiliate, BlueSkye.

**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

355. But for GeekPlus' wrongful conduct, Oneiro would have continued its relationship with Nissan and would have realized economic benefit from the Nissan Projects.

356. GeekPlus' conduct was a substantial factor in causing harm to Oneiro.

357. Oneiro has suffered damages from its lost economic opportunity in an amount to be proven at trial.

## COUNT XXIII
## NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST GEEKPLUS

358. Oneiro incorporates by reference the allegations of paragraphs 1 through 144 as if fully set forth herein.

359. This claim is brought under the common law of California and pleaded in the alternative to the count for tortious interference with prospective economic advantage against GeekPlus.

360. Oneiro had an economic relationship with Nissan concerning the Nissan Projects, including a reasonable probability of future economic benefit as the warehouse designer, engineer and systems integrator for those projects.

361. GeekPlus knew, or reasonably should have known, of the relationship between Oneiro and Nissan, as GeekPlus was engaged by Oneiro to provide products and software in connection with the Nissan Projects.

**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

362. GeekPlus owed Oneiro a duty of care arising from, among other things, the parties' relationship and GeekPlus's access to Oneiro's confidential and proprietary information, including cost and pricing data.

363. GeekPlus breached that duty by negligently disclosing, sharing, or otherwise failing to safeguard Oneiro's confidential cost and pricing data, including by providing such information to LiftOne without authorization.

364. GeekPlus knew, or should have known, that such conduct would likely interfere with Oneiro's relationship with Nissan, including by enabling third parties to bypass Oneiro and restructure the Nissan Projects without Oneiro's involvement.

365. As a direct and proximate result of GeekPlus's negligent conduct, LiftOne restructured the Nissan Projects, removed Oneiro as the warehouse designer, engineer and systems integrator, and replaced Oneiro with its affiliate, BlueSkye.

366. GeekPlus's conduct was a substantial factor in causing harm to Oneiro.

367. Accordingly, Oneiro has suffered damages from its lost economic opportunity in an amount to be proven at trial.

**SRIPLAW**

CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

WHEREFORE, the Plaintiff Oneiro Technologies, Inc. prays for judgment against Defendants GeekPlus America Inc., LiftOne LLC, and BlueSkye Automation LLC:

A. Enjoining Defendants and their respective agents, employees, officers, directors, and representatives, preliminarily and permanently from directly or indirectly, or alone or in concert with others, from any further use of Oneiro's proprietary information including Oneiro's copyrighted ASRS steel structure, any derivative works thereof, and any materials authored by Oneiro in connection with its former business relationship with Defendants;

B. Directing Defendants and their respective agents, employees, and representatives to immediately destroy, and certify the destruction of, all of Oneiro's proprietary information and any and all copies thereof;

C. Awarding plaintiff its actual damages and Defendants' profits attributable to the infringement, or, at Plaintiff's election, statutory damages, as provided in 17 U.S.C § 504, for defendants' copyright infringement;

D. Ordering an accounting by Defendants of any profits derived in any way from Defendants' wrongful acts;

E. Awarding Oneiro actual damages in an amount to be proved at trial and/or as otherwise provided by law, for the trade secret, unfair

**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

competition, false advertising and other violations alleged herein pursuant to the statutes sued upon;

F.  Awarding Oneiro exemplary damages pursuant to the trade secret violations alleged herein in the amount of two times the amount of compensatory damages for the willful and malicious misappropriation of Oneiro's trade secrets;

G.  Awarding Oneiro compensatory, special, and at least nominal damages in an amount to be proved at trial and/or as otherwise provided by the statutes sued upon;

H.  Awarding Oneiro punitive damages for the defendants' intentional acts, willful misconduct, malice, fraud, wantonness, oppression, and other actions demonstrating entire want of care and conscious indifference to consequences pursuant to Georgia law or California law;

I.  Awarding Oneiro pre-judgment and post-judgment interest, to the extent allowable by law or contract;

J.  Awarding Oneiro its reasonable attorneys' fees and costs pursuant to the parties' agreements and/or applicable statutes; and

K.  Awarding Oneiro such other legal or equitable relief as the Court deems just and proper.

Dated: May 7, 2026                                    Respectfully submitted,

**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE

/s/ Joel B. Rothman
JOEL B. ROTHMAN
Georgia Bar Number: 979716
joel.rothman@sriplaw.com

**SRIPLAW, P.A.**
21301 Powerline Road
Suite 212
Boca Raton, FL 33433
561.404.4350 – Telephone
561.404.4353 – Facsimile

and

EVAN A. ANDERSEN
Georgia Bar Number: 377422
evan.andersen@sriplaw.com
ANTHONY UNDERWOOD
Georgia Bar Number: 685078
aj.underwood@sriplaw.com

**SRIPLAW, P.A.**
3355 Lenox Rd. NE
Suite 750
Atlanta, GA 30326
561.404.4350 – Telephone
561.404.4353 – Facsimile

*Counsel for Plaintiff Oneiro Technologies, Inc.*

**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE